The People of the State of Illinois ex rel. John A. Swanson, State's Attorney of Cook County, Appellant, v. Michael Heitler and Henry Kimmel, Appellees.

Gen. No. 34,064.

Opinion filed April 28, 1930.

JOHN A. SWANSON, State's Attorney, for appellant; EDGAR B. ELDER, Assistant State's Attorney, of counsel.

ROSENBERG, BRAUDE & ZIMMERMAN and BERKE & COHEN, for appellees; H. J. ROSENBERG and IRVING BERMAN, of counsel.

Mr. Presiding Justice McSurely delivered the opinion of the court.

We are asked to construe section 8 of the act providing for the suppression of houses of prostitution as public nuisances (Chapter 38, ¶¶ 148–158, Cahill's Illinois Statutes, in force July 1, 1915), with reference to whether the word ''owner'' in the section includes also a tenant or lessee of the building. The entire section is as follows:

''If the owner of such building or apartment, or such place shall appear and pay all costs which may have been assessed, and shall file a bond with sureties to be approved by the clerk, in the penal sum of not less than one thousand dollars nor more than five thousand dollars, conditioned that such owner will immediately abate such nuisance and prevent such a nuisance from being established or maintained therein within a period of one year thereafter, the court shall vacate such decree and order of abatement, so far as the same may relate to such building or apartment, or such place, and shall also vacate the order directing the sale of the movable property. The release herein provided for shall not release such property from any judgment, lien, penalty, or liability to which it may be otherwise subject by law.''

August 30, 1929, a bill in equity was filed by the complainant for the purpose of abating a house of prostitution located at 355–357 Burr Oak Avenue, Blue Island, Illinois, sometimes called ''Burr Oak Inn,'' pursuant to the provisions of the statute aforesaid. The bill alleged that Sara C. Colwell, Winston S. Colwell, Everett C. H. Colwell, Audry C. Colwell and Gladys B. Colwell were owners of the property. They were served with summons but did not appear and were accordingly defaulted and the bill taken as confessed as to them. They do not appeal from the decree. The bill charged that a house of prostitution

was conducted on said premises by Michael Heitler, Henry Kimmel, alias Harry Kimmel, and Nellie Meyers. These parties were served with summons and the bill taken as confessed as to Nellie Meyers. Heitler and Kimmel appeared and filed a joint answer. A trial was had and at the conclusion the court entered a decree finding that the premises in question was a house of prostitution and a public nuisance; that the Colwells were the owners of the premises; that Heitler, Kimmel and Nellie Meyers operated said house of prostitution. The decree enjoined all the defendants from maintaining and operating said nuisance and directed the sheriff to seal and lock said building and to keep the same locked and sealed for a period of one year and to sell the chattels. This decree was entered December 9, 1929, and immediately upon the same date a petition was filed on behalf of the defendant Kimmel invoking the provisions of section 8 as a lessee of the premises. Complainant filed a demurrer to this petition which, after hearing, was overruled. Complainant electing to stand by the demurrer, an order was entered in accordance with the prayer of the petition, from which this appeal was prayed by complainant.

Defendant Kimmel's petition recited the entry of the decree and alleged that he had been for several years past the lessee and tenant of the premises; that he had a lease on the same expiring April 30, 1933, at a rental of $65 a month; that the premises consist of 37 rooms, all equipped with furniture, and that there is a restaurant also on the premises fully equipped; that he is the sole owner of the equipment and the personal property and has an investment therein to the amount of approximately $12,000; that since the month of September, 1929, when the officers of the State's Attorney's office of Cook county conducted a raid on said premises the nuisance complained of has been abated; that none of the persons arrested in any of the raids

are now associated in or about said premises in any manner or form and that no person other than the petitioner has any interest in said hotel and restaurant business; that the business now being conducted on said premises is legitimate and in strict compliance with the law, and that it is the intention of petitioner to continue the business in this manner. Petitioner offered to furnish a bond, as provided by the statute, and to pay all the costs which had been assessed against the defendant in the proceeding.

It should be noted from the record that both defendants Heitler and Kimmel have been repeatedly convicted of violations of the law. Heitler served a term in the federal penitentiary for violation of the White Slave Law; he was also convicted in the criminal court of Cook county as a keeper of a house of prostitution at 357 Burr Oak Avenue, Blue Island, the same premises now in question. Kimmel also has been repeatedly convicted as the keeper of a house of prostitution and for other violations of the law.

Was it the intention of the legislature to provide by section 8 that not only the owner but a tenant could, by filing a petition and complying with the terms of this section, secure a vacation of the decree?

Consideration of the entire act shows that the word "owner" and the word "occupant" are used in definite and different connections. The first section provides that the "owners, agents, and occupants of any such building or apartment" may be deemed guilty of maintaining a public nuisance and may be enjoined. Section 2 provides that the nuisance may be abated by injunction, provided that no such injunction shall issue, except when sought by "an owner or agent," unless "the owner or agent of such building or apartment" knew or had been personally served with a notice of the filing of the petition and that notice must be served "upon such owner or such agent of such

building or apartment or place at least five days prior thereto, that such building or apartment or such place, specifically describing the same, was being so used, naming the date or dates of its being so used, and that such owner or agent had failed to abate such nuisance." This section also provides that the "lessee, if any, of the building or apartment, or of the place shall be made a party defendant to such petition." Section 5 provides that no injunction shall issue against the owner nor order be entered requiring any building to be closed "if it appears that such owner and his agent have in good faith endeavored to prevent such nuisance." In other parts of the act the rights and obligation of the owner are expressed as distinct from those of the occupant or lessee.

It is apparent that the act contemplated giving an owner an opportunity to abate the nuisance without an order of court, and is framed upon the theory that the owner may have no knowledge of the nuisance committed by his tenant and that he should not be penalized by the closing of his building where he will give bond, as provided by section 8, that no such nuisance will be allowed.

Consistent with the distinction between the rights of the owner and the right of the occupant are the opinions in *People v. Eisenberg,* 202 Ill. App. 63; *People v. Lipschultz,* 240 Ill. App. 411; *People v. Kohn,* 243 Ill. App. 31. In *People v. King,* 289 Ill. 462, the court had under consideration a decree which perpetually enjoined King, a tenant, from maintaining a house of prostitution anywhere "within the jurisdiction of this court." It appears that King conducted a house of prostitution in premises other than those described in the original bill but within the jurisdiction of the court. It was held that the act gave the People the remedy by injunction not only to close the premises described in the bill but also empowered the court to enjoin the

party directly carrying on such a nuisance from conducting any other such nuisance at any place within the jurisdiction of the court.

It would do violence to the purpose of the act, which was to suppress such nuisances, to construe section 8 aforesaid so as to permit the very person who has been conducting the nuisance, by simply promising to reform and paying the costs of the proceeding, to procure the vacation of the injunctional decree. The section was manifestly not intended to protect the person found guilty of conducting the nuisance. The showing that Kimmel and Heitler habitually conducted houses of prostitution and that Kimmel was present and active in running the house in question gives emphasis to this view. The only reasonable construction of the section is to confine its operation to the owner.

For the reasons indicated we hold that the demurrer should have been sustained and the petition dismissed. The order will therefore be reversed and the cause remanded for further proceedings consistent with what we have said in this opinion.

*Reversed and remanded.*

MATCHETT and O'CONNOR, JJ., concur.